Eric Wannamaker, *pro se*
ewannama@hotmail.com
Utah State Bar No. 12270
Moscow, Idaho
208-301-9000

U.S. COURTS

MAY 3 0 2017

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC EDGECOMB WANNAMAKER,<br><br>Plaintiff,<br><br>vs.<br><br>HON. RAYMOND E. MABUS, JR.,<br>SECRETARY OF THE NAVY,<br>UNITED STATES NAVY,<br><br>Defendant. | Case No. **3:16-CV-549-CWD**<br><br>**STATEMENT OF MATERIAL FACTS<br>IN SUPPORT OF<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1, Plaintiff submits

the following statement of material facts as to which he contends there is no genuine disputed

issue.

### BACKGROUND

1.      Plaintiff served on active duty in the United States Navy for sixteen years.

Administrative Record (AR) Vol II 002.

2.      Plaintiff resigned his commission from an earlier period of duty to attend law school.

AR Vol II 043.

3.      After that break in service, Plaintiff joined the Navy Judge Advocate General's (JAG)

Corps (JAGC). AR Vol II 002.

4.  From May 2012 to January 2016, Plaintiff served as an Assistant Staff Judge Advocate at the Naval Criminal Investigative Service (NCIS). AR Vol II 073.

5.  Plaintiff was twice not selected on active duty for promotion to the rank of lieutenant commander. AR Vol I 028, 085.

6.  On February 1, 2016, Plaintiff was discharged from active duty due to failure to select for promotion. AR Vol II 002.

7.  The selection rate was 74.47 percent for the FY-15 board, and 74.58 percent for the FY-16 board. AR Vol I 017, 038, 074.

8.  There were no below-zone selections at either board. AR Vol I 017, 074.

9.  Defendant maintains records which list the five members of each board. AR Vol I 023, 080.

## II.    SSB Request

10.  In a written administrative request to Defendant dated October 20, 2015, Plaintiff sought a Special Selection Board (SSB), alleging that regular selection boards reviewing his records were tainted by material error in the form of impermissible bias. AR Vol I 005-010.

11.  Plaintiff alleged that board members for FY-15 and FY-16, drawn from the senior ranks of the JAGC, were unfairly biased in two respects. AR Vol I 005-010.

12.  First, Plaintiff described bias based on his association with NCIS, based on Plaintiff's familiarity with issues encountered at NCIS. AR Vol I 005-008.

13.  The SSB request points to a disparity between promotion statistics of judge advocates

as a whole and the selection of zero of seven (0 of 7) recent judge advocates assigned to NCIS; this dearth of promotions coincided with the tenure of former JAG, Vice Admiral Nanette Derenzi. AR Vol I 005-006.

14.     The SSB request describes logical bases for bias, including a strained relationship between the Office of the JAG (OJAG), run by uniformed judge advocates, and the now civilian-run NCIS, based in part on recent legislative interest in and changes to military justice and an ongoing investigation of Glenn Defense Marine Asia (GDMA). AR Vol I 006.

15.     The SSB request notes that investigative records for open investigations are held by the law enforcement agencies and the disposition authority, but points to several indicia of bias on the part of Admiral Derenzi, who served as the president of the FY-16 board. AR Vol I 006-008.

16.     The SSB request indicates that NCIS had participated in vetting Admiral Derenzi for access to GDMA information, and she was frustrated by the process which resulted in denied access to at least one senior OJAG member. AR Vol I 006.

17.     In addition it describes NCIS's role in records releases, and the objections of senior judge advocates to release of information regarding the role of judge advocates in providing ethics advice in relation to GDMA activities. AR Vol I 007.

18.     Also related to GDMA, the SSB request notes that several board members had served in operational billets in the geographical area of interest when GDMA was actively contracting, that at least one was interviewed by NCIS for the open investigations, and that NCIS had investigative records which would confirm the extent to which the board members or their commanders were involved. AR Vol I 007.

19.     Apart from GDMA, the SSB request contrasts special OJAG attention to the Victims' Legal Counsel (VLC) program with a relative low regard for NCIS as "not understand[ing] VLC" and the "one regular participant in military justice proceedings which is outside the general experience of the legal community." AR Vol I 007.

20.     Related to alleged bias against NCIS, the SSB request provides two example interactions between NCIS and OJAG, each occurring one week before the respective boards. AR Vol I 007-008.

21.     The first example was of a meeting at OJAG related to defense counsel complaints about NCIS interviews, which suggested "an assumption that NCIS investigations were flawed in a systematic way." AR Vol I 007.

22.     The second example involved a call to Plaintiff from a staff member at OJAG, wherein the OJAG officer raised his voice over a contentious issue and indicated that he was going to be personally briefing Admiral Derenzi on a topic of interest. AR Vol I 008.

23.     The SSB request noted that the OJAG officer was dissatisfied with the response of responsible civilian NCIS managers, and expected an immediate definitive response from Plaintiff, whom he understood to be the only judge advocate then assigned to NCIS Headquarters. AR Vol I 008.

24.     The second form of bias alleged was due to Plaintiff's status as a judge advocate with previous service in another officer community within the Navy, who did not join via the funded Law Education Program (LEP). AR Vol I 008-010.

25.     Based on Plaintiff's first-hand observations, he asserted that former Naval Aviators and Naval Flight Officers were underrepresented among prior service officers in the JAGC,

and non-LEP prior service officers tended to promote at a lower rate than LEP officers.  AR Vol I 008.

26.     To explain this disparity, Plaintiff indicated that multiple senior judge advocates had advised that prior service would not be considered by a board as it would be for LEP officers and as required by regulations.  AR Vol I 008.

27.     Instead, officers without prior service "have expressed concern that prior service officers will be promoted to the detriment of those without prior service."  AR Vol I 009.

28.     The SSB request goes on to identify misconceptions about whether LEP officers are a higher-tier of prior-service officers, and how such perceptions would tend to cause bias against non-LEP prior-service officers.  AR Vol I 009.

29.     In addition, the SSB request points to relatively longer tour lengths for junior flight officers, and how this would contribute to probable bias due to numbers of end-of-tour awards and the perception that a greater number of billets translates to greater variety of duties within those billets.  AR Vol I 009-010.

30.     The SSB request notes that Plaintiff was able to confirm a correlation between selection and shorter tour length using a sampling of biographies.  AR Vol I 010.

31.     Though the SSB request included no enclosures, it noted the location of corroborating information throughout, and reiterated that the GDMA investigation remained open.  AR Vol I 005-010.

32.     While alleging bias at two boards, the SSB request sought only a Fiscal Year 2016 SSB as remedy, specifically noting a regulatory limit on submitting separate requests.  AR Vol I 005-010.

33.     Regarding potential remedy, the request waived any claim to judge advocate representation on an SSB.  AR Vol I 010.

### III.    SSB Response

34.     Defendant failed to act on the SSB request within twelve months.  AR Vol I.

35.     On January 6, 2017, Defendant was served with Plaintiff's original complaint and motion for summary judgment in this case, based on the theory that silent denial is arbitrary and capricious.  Original Complaint and Affidavit of Process Server.

36.     On January 11, 2017, Defendant provided a written notification to Plaintiff of denial of the SSB request.  AR Vol I 001-002.

37.     The notification concludes that Plaintiff failed to show requisite error or deprivation by a preponderance of evidence, with the sole bias-related fact referenced being the self-certification of board members at the FY-16 board.  AR Vol I 002.

38.     The notification references no additional analysis or inquiry, but the AR reveals that the responsible Assistant Secretary of the Navy initialed an Action Memo recommending disapproval of the SSB request on December 21, 2016.  AR Vol I 003-004.

39.     That Action Memo in turn relies on a Legal Memorandum from military counsel to the Chief of Naval Personnel, initialed July 12, 2016, which also indicates a failure to show material error by a preponderance of the evidence.  AR Vol I 011-016.

40.     The Legal Memorandum provides analysis behind the recommendation and Defendant's ultimate decision to disapprove the SSB request.  AR Vol I 011-016.

41.     The Legal Memorandum notes that the SSB request was based on bias at two boards

and sought remedy for FY-16, though bias at the FY-15 board is referenced again only with respect to self certification of board members.  AR Vol I 011 FN1, 015.

42.     After summarizing Plaintiff's allegations, the Legal Memorandum counters the NCIS-based bias by distinguishing a case which had been referenced within the SSB request, *Mori v. Dep't of the Navy*, 917 F. Supp. 2d 60 (D.D.C. 2013).  AR Vol I 012.

43.     The Legal Memorandum notes that Mori, a Marine Corps judge advocate, had faced a board with only one judge advocate who could appreciate ethical responsibilities in defending Guantanamo detainees, and had shown that at least one board member was from a community within the service which had publicly impugned his loyalty.  AR Vol I 012-013.

44.     Defendant's Legal Memorandum claims that Plaintiff "argues that the majority of JAGC billets are adversarial with NCIS" and responds that this premise overlooks the reliance of prosecutors and staff judge advocates on NCIS investigations.  AR Vol I 013.

45.     Related to GDMA vetting, the Legal Memorandum describes a policy to not knowingly nominate flag officers to boards if they have been identified as persons of interest, and notes that routine records checks conducted prior to the boards at issue did not identify Admiral Derenzi as a person of interest in the GDMA investigation.  AR Vol I 012 FN 2.

46.     The Legal Memorandum characterizes the 0 of 7 statistic for selection of NCIS-affiliated judge advocates as "specious," pointing to both a FY-17 selection of an NCIS-assigned officer, and failure to take into account "other factors" influencing the boards.  AR Vol I 013.

47.     It claims that Plaintiff's failure to name the non-selected judge advocates makes it impossible to compare records to "assess whether factors aside from NCIS-affiliation may

have played a role." AR Vol I 013.

48.    Turning to the second type of alleged bias, military counsel sought assistance from

JAGC-run offices within the Navy Personnel Command and Bureau of Naval Personnel,

resulting in a statement that "neither entity maintained data that supported [Plaintiff's]

assertions." AR Vol I 014.

49.    Judge advocates at the Navy Personnel Command did counter with an example of a

non-LEP prior-service officer who had promoted below zone to lieutenant commander. AR

Vol I 014.

50.    Related to potential remedy and Plaintiff's volunteered waiver of judge advocate

representation, the Legal Memorandum claims that the SSB request "erroneously

presupposes that all Navy judge advocates are incapable of being impartial when considering

judge advocates with [Plaintiff's] background. AR Vol I 014.

51.    Citing regulation, the Legal Memorandum asserts that Plaintiff's voluntary waiver is

prohibited because "staff corps selection boards shall consist of five or more active-duty list

(ADL) officers, at least one of which shall be an Unrestricted Line officer, with the remaining

members drawn from the competitive category under consideration." AR Vol I 014.

Dated: May 25, 2017                    Respectfully submitted,

                                       _____
                                       Eric E. Wannamaker

## CERTIFICATE OF SERVICE

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that today I mail by U.S. Mail this Statement of Material Facts to:


Office of the Judge Advocate General
General Litigation (Code-14)
1322 Patterson Ave., Suite 3000
Washington Navy Yard, DC 20374-5066


United States Attorney's Office
Civil Process Clerk
Washington Group Plaza IV
800 E Park Blvd, Suite 600
Boise, ID 83712


Executed on: _____25 MAY 2017_____

Eric E. Wannamaker
Moscow, Idaho