Eric Wannamaker, *pro se*
*ewannama@hotmail.com*
Utah State Bar No. 12270
Moscow, Idaho
208-301-9000

U.S. COURTS

MAY 3 0 2017

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC EDGECOMB WANNAMAKER, <br><br> Plaintiff, <br><br> vs. <br><br> HON. RAYMOND E. MABUS, JR., SECRETARY OF THE NAVY, UNITED STATES NAVY, <br><br> Defendant. | Case No. **3:16-CV-549-CWD** <br><br> **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> Oral Argument Requested |

Defendant denied Plaintiff's request for a Special Selection Board (SSB), an action subject to judicial review under 10 U.S.C. § 628(g). For consideration here is whether Defendant's denial of the SSB request is adequately supported by the Administrative Record (AR) (such that Defendant should prevail on cross-motion), or whether that denial is instead either arbitrary and capricious or unsupported by substantial evidence (Plaintiff's position in this motion). Due to Defendant's unexplained failure to act on the SSB request within one year, the request was first silently denied by operation of 10 U.S.C. § 628(g)(3). Defendant later issued an explicit denial. The AR does reveal some deliberation by Defendant even before the silent denial, primarily in the form of a staff legal memorandum. While the AR

initially appears to address portions of the SSB request, the inquiry is stunted and its counterpoints are flawed such that they do not actually demonstrate a reasonably robust inquiry and sound line of reasoning from the request to its denial. This motion seeks a remand to Defendant in order to convene an SSB, which could result in Plaintiff's retroactive promotion and reinstatement on active duty as a naval officer. Plaintiff has the burden as moving party, starting with summarized facts and a summary of the applicable legal framework. A separate Statement of Material Facts is drawn directly from the AR and supports the analysis here.

## SUMMARY OF FACTS

### I.   Background

Plaintiff was discharged from the United States Navy after sixteen years on active duty due to failure to select for promotion to the rank of lieutenant commander. AR Vol II 002. Most recently, Plaintiff served as a member of the Navy Judge Advocate General's (JAG) Corps (JAGC) at the Naval Criminal Investigative Service (NCIS). *Id.* 002, 073. Plaintiff failed to select at boards for Fiscal Year 2015 (FY-15) and FY-16, where the overall selection rates for judge advocates were 74.47 percent and 74.58 percent, respectively. AR Vol I 017, 028, 038, 074, 085.

### II.   SSB Request

Plaintiff submitted a written request for a Special Selection Board (SSB), alleging that regular selection boards reviewing his records were tainted by material error in the form of impermissible biases. *Id.* 005-010.

First, Plaintiff described bias based on his association with NCIS, identifying a

disparity between promotion statistics of judge advocates as a whole and the selection of zero of seven (0 of 7) recent judge advocates assigned to NCIS. *Id.* 005-008. The SSB request then describes logical bases for bias, including reference to Vice Admiral Nanette Derenzi, the former JAG and president of the FY-16 board. *Id.* 006. Per the SSB request, Admiral Derenzi had been vetted by NCIS for access to information regarding open investigations into Glenn Defense Marine Asia (GDMA), and was frustrated by the process and its results. *Id.* The SSB request also describes conflict with members of OJAG based on NCIS's role in records releases and judge advocate ethics advice related to GDMA, notes that several board members had served in operational billets in the geographical area of interest when GDMA was actively contracting, and that at least one was interviewed by NCIS for the open investigations. It also notes that NCIS holds investigative records which would confirm the extent to which the board members or their commanders were involved. *Id.* 007. Apart from GDMA, the SSB request contrasts special OJAG attention to the Victims' Legal Counsel program with a relative low regard for NCIS. *Id.* It also provides two example interactions where Plaintiff interacted directly with OJAG personnel on issues of direct interest to Admiral Derenzi, each occurring one week before the respective boards. *Id.* 007-008.

The second form of bias alleged was due to Plaintiff's status as a judge advocate with previous service in another officer community within the Navy, who did not join via the funded Law Education Program (LEP). *Id.* 008-010. Plaintiff described first-hand observation that former Naval Aviators and Naval Flight Officers were underrepresented among prior service officers in the JAGC, and non-LEP prior service officers tended to promote at a lower rate than LEP officers. *Id.* 008. To explain this disparity, Plaintiff

indicated that multiple senior judge advocates had advised that prior service would not be considered by a board as it would be for LEP officers and as required by regulations. *Id.* The SSB request goes on to identify misconceptions about whether LEP officers are a higher-tier of prior-service officers, and how such perceptions would tend to cause bias against non-LEP prior-service officers. *Id.* 009.

### III.   SSB Response

Ultimately, Defendant provided Plaintiff with a written denial of the SSB request, concluding that Plaintiff failed to show requisite error or deprivation by a preponderance of evidence, with the sole bias-related fact referenced being the self-certification of board members at the FY-16 board. *Id.* 002. The AR reveals more substantive analysis in the form of a Legal Memorandum from military counsel to the Chief of Naval Personnel. *Id.* 011-016.

The Legal Memorandum counters the NCIS-based bias by distinguishing the roadmap case cited by Plaintiff in the SSB request, *Mori v. Dep't of the Navy*, 917 F. Supp. 2d 60 (D.D.C. 2013), reasoning in part that the mostly non-judge advocate board members there were less likely to appreciate ethical responsibilities in defending Guantanamo detainees. AR Vol I 012-013. Mori, a Marine Corps judge advocate, had also shown that at least one board member was from a community within the service which had publicly impugned his loyalty. *Id.* Related to GDMA vetting, the Legal Memorandum describes a policy to not knowingly nominate flag officers to boards if they have been identified as persons of interest, and notes that routine records checks conducted prior to the board did not identify Admiral Derenzi as a person of interest in the GDMA investigation. *Id.* 012 FN 2. The Legal Memorandum characterizes the 0 of 7 statistic for selection of NCIS-affiliated judge advocates as

"specious," pointing to both a FY-17 selection of an NCIS-assigned officer, and failure to take into account "other factors" influencing the boards. *Id.* 013.

Turning to the second type of alleged bias, military counsel sought assistance from JAGC-run offices within the Navy Personnel Command and Bureau of Naval Personnel, resulting in a statement that "neither entity maintained data that supported [Plaintiff's] assertions." *Id.* 014. Judge advocates at the Navy Personnel Command did counter with an example of a non-LEP prior-service officer who had promoted below zone to lieutenant commander. *Id.*

## STANDARD OF REVIEW AND STATUTORY FRAMEWORK

Summary judgment is appropriate where material facts are not in dispute, and judgment may be rendered as a matter of law. Fed. R. Civ. P. 56(a). On the claim that denial of an SSB is arbitrary and capricious, it is the Defendant's decision-making process which is material, rather than the substance of the request and underlying facts. *See Mori*, 917 F. Supp. 2d at 66 (*citing Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 374 (1998) ("Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational")). Where there is a "contemporaneous explanation of the agency decision," the administrative record should be used to evaluate its propriety, rather than *post hoc* rationalizations. *Camp v. Pitts*, 411 U.S. 138, 143 (1973).

SSBs may be convened by secretaries of military departments to address material unfairness in regular promotion boards. 10 U.S.C. § 628(b). Once convened, an SSB reviews an individual's record in comparison to selected records of other officers considered

by the board. *Id.* If a court finds a denial of SSB to be arbitrary or capricious, not based on substantial evidence, a result of material error of fact or administrative error, or otherwise contrary to law, it may set aside the denial and remand the case to the Secretary to convene a board. 10 U.S.C. § 628(g)(1). Review of agency actions is deferential: "within this narrow review, we cannot substitute our judgment for that of the [agency], but instead must uphold the agency decisions so long as the agencies have 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Selkirk Conservation Alliance v. Forsgren*, 336 F.3d 944, 953-954 (9th Cir. 2003) (quoting *Washington Crab Producers, Inc. v. Mosbacher*, 924 F.2d 1438, 1441 (9th Cir. 1990)).

Actions are arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *cf. Mori*, 917 F. Supp. 2d at 63 (describing D.C. Circuit's application of "unusual deference" to military personnel decisions); *Mueller v. Winter*, 485 F.3d 1191, 1198 (D.C. Cir. 2007).

"In addition to conducting an 'arbitrary or capricious' analysis, the Court also must consider whether the denial was based on 'substantial evidence,' or evidence that would have made it possible for a reasonable jury to reach the same decision." *Mori*, 917 F. Supp. 2d at 63, FN 2 (D.D.C. 2013) (citing *Allentown Mack*, 522 U.S. at 366-67).

## ARGUMENT

Based on a fundamentally flawed and inadequate inquiry, and despite a lengthy period

for deliberation, Defendant's SSB response fails to consider substantial portions of the SSB request and is arbitrary and capricious in that it fails to provide a logical path to its decision. In particular, the SSB response dismisses the 0 of 7 statistic for selection of NCIS-affiliated judge advocates without meaningful analysis, and addresses regular records checks for flag officers sitting on selection boards in lieu of the separate vetting and modes of logical bias actually described in the SSB request. By not employing resources under Defendant's control to conduct a reasonable inquiry into relevant facts, the decision is not based on substantial evidence, but rather willful blindness.

I.      **Defendant conducted an inadequate inquiry in light of the specific references and information provided in the SSB request.**

There is no requirement that Defendant conduct a particular level of investigation for all SSB requests. However, inquiry must reasonably address information presented in order to validate the ultimate decision. Among other resources, Defendant exercises authority over NCIS and Navy Inspectors General. Secretary of the Navy Instruction (SECNAVINST) 5430.107, SECNAVINST 5430.57G. Defendant has imposed limits on disclosure of NCIS information regarding investigations. SECNAVINST 5430.107 para 6(b)(1)(e). Where Department of the Navy entities performing Inspector General functions identify conflicts of interest or the appearance thereof, they are directed to elevate such concerns. SECNAVINST 5430.57G para 7(p). Plaintiff's SSB request referenced information related to participation in and vetting for access to an open and widespread criminal investigation, noted that records of ongoing GDMA investigations were held by law enforcement entities, and indicated that further corroborating details of the vetting were available at NCIS and the Navy's Office of General Counsel (OGC). There is no indication within the AR of queries to NCIS, civilian

OGC lawyers, or any inspector general under Defendant's authority, and there is no explanation of why such queries were deemed unnecessary.

For corroboration of relative promotion rates, the SSB request pointed to the Navy Personnel Command. Though it does not demonstrate availability of searchable computerized records systems, AR Vol II provides an example of extensive data available to Defendant on each service member. Faced with information challenging the impartiality of the former leader of the JAGC, and suggesting bias by other senior judge advocates, the only significant inquiry and analysis within the AR was handled entirely by judge advocates. Nothing in the Defendant's response indicates that participants raised the possibility of a conflict of interest. Instead of checking with records specialists within the Navy Personnel Command as a whole, inquiry was limited to "JAGC detailers and community managers," even after those judge advocates proved unable to answer an apparently simple question of which judge advocates were most recently assigned to NCIS. If a hypothetically less constrained inquiry within the Navy Personnel Command had also failed to identify individuals recently assigned to NCIS , one would reasonably expect a call to NCIS to be fruitful. The claim that judge advocate detailers and community managers do not maintain data, while making no efforts to use other resources and data readily available to Defendant, is willful blindness. While judge advocate involvement in analyzing an SSB request is appropriate, the nature of Plaintiff's request raises a reasonable expectation that robust analysis would involve other participants to ensure objectivity, likely at NCIS and OGC. A flawed inquiry is not itself basis for remedy here, but does echo in the analysis to follow. The inquiry leaves significant unresolved issues for a reasonably thorough and curious decision-

maker.

## II.    Defendant cites two facially irrelevant data points in response to evidence of disparities in comparative promotion rates.

The SSB response includes limited information on two individuals, one who promoted from NCIS and another who promoted as a non-LEP prior-service officer.  Beyond the point that a single datum means little with respect to bias or comparative rates of selection between groups, these data in the context of the AR are not relevance to bias at the FY-15 and FY-16 boards.

First, Defendant identified an NCIS-assigned individual who promoted at the FY-17 commander board.  AR Vol I 013.  The mention of the FY-17 board is clearly flawed, as that board postdated both Plaintiff's SSB request and the earlier retirement of Admiral Derenzi.[1] Based on Plaintiff's SSB request, it is reasonable to expect that awareness of this claim of bias or Admiral Derenzi's departure from the JAGC might reduce the chances at later boards of the types of conscious or unconscious biases described.  There is no information presented on how long the selected individual was assigned to NCIS before the board, and to what extent that officer's record showed involvement with contentious issues between NCIS and OJAG.  In contrast, the SSB request lists two examples, with sufficient detail to allow for verification, in which Plaintiff interacted directly with OJAG staff on issues of interest to Admiral Derenzi a week before each board.  In addition, regarding the FY-17 selection, one would reasonably expect a higher-ranked judge advocate to have a smaller proportion of judge advocate evaluations from NCIS.  There is no information in the AR on the last selection of an NCIS-assigned officer before the FY-17 board, other than information in the

---

1   The FY-17 Active Duty O-5 Staff board was convened March 22, 2016.  Tracker is available at:
    http://www.public.navy.mil/bupers-npc/boards/activedutyofficer/05staff/Pages/FY-17.aspx

SSB request regarding a dearth of selections during Admiral Derenzi's tenure as JAG.

Second, Defendant noted a prior-service officer who promoted to lieutenant commander below-zone. AR Vol I 014.  Details are lacking, but this individual did not promote at either the FY-15 or FY-16 boards, as there were no below-zone selections at those boards. AR Vol I 017, 074.  There have not been below-zone selections since FY-11 at the earliest, and the AR does not identify in which decade this selection occurred.[2]  That this early selection of a prior-service officer sticks in institutional consciousness, while more recent and responsive records are not maintained by those queried, is more likely to reflect and have contributed to subsequent corrective bias as described in the SSB request than it is to refute comparatively low selection rates.  Depending on when this selection occurred, it could have served to shape and help explain the attitudes of current senior officers which were observed and described by Plaintiff in the SSB request, where prior service officers have been viewed as taking spots away from those with similar time as judge advocates but less Navy experience.  Regardless, Defendant provides no additional detail for either of these counter-examples, and no explanation for why a FY-17 and pre-FY-12 selection are relevant to the present matter.

### III.     Defendant did not reasonably analyze comparative selection rates between NCIS-assigned judge advocates and the JAGC as a whole.

The first evidence of bias described in the SSB request was that zero of the latest seven (0 of 7) judge advocates assigned to NCIS had selected for promotion.  AR Vol I 005. This was presented as an improbable result (absent bias against NCIS) in light of overall

---

2   Defendant's publicly available statistics go back to FY-12 and show no below zone selects for lieutenant commander judge advocates through FY-16.  Archive is available at: http://www.public.navy.mil/bupers-npc/boards/activedutyofficer/archive/Pages/default.aspx.

promotion statistics for judge advocates, and added that "Vice Admiral Nanette Derenzi's tenure as [the Judge Advocate General] coincides with the recent dearth of promotions for officers associated with NCIS[.]" AR Vol I 006. Defendant's Legal Memo glosses over the 0 of 7 statistic, first characterizing it as "specious" without actually refuting its accuracy, then citing the subsequent promotion of one NCIS-assigned officer (discussed above), then suggesting unidentified "other factors" which may have influenced board members, and closing discussion with: "since [Plaintiff] failed to identify the non-selected judge advocates he references, it is impossible to compare their records to those of the judge advocates who were selected to assess whether factors aside from NCIS affiliation may have played a role." AR Vol I 013.

This response to the 0 of 7 statistic deflects without any reasonably meaningful analysis. Even if the FY-17 selection were relevant, a single contrary datum does not disprove bias. A 1 of 8 statistic would still be a significant mismatch with the overall promotion rates (discussed further below). The stated desire to compare individual records of judge advocates within NCIS suggests confusion with respect to both the significance of comparative promotion rates and the appropriate time and place to compare individual records, which would be the role of an SSB. Assuming examination of individual records of NCIS-assigned officers was deemed necessary to the analysis, it is again notable that the AR reflects no attempt to identify those officers through query to NCIS or Plaintiff or records keepers within the Navy Personnel Command other than judge advocates. As described above, Defendant's resources include NCIS, the Navy Personnel Command, and Inspectors General. It is simply not credible that Defendant cannot identify the latest seven judge

advocates assigned to NCIS leading up to Plaintiff's SSB request. There is no evidence that Defendant otherwise identified the "other factors" or reasons which might have explained the unusual 0 of 7 statistic; this response invites both reasonable curiosity and post-hoc rationalization.

A reasonable response would consider the 0 of 7 statistic in comparison to overall selection rates, seek a systemic explanation if the mismatch were deemed significant, and name causal factors other than bias. Though Defendant's SSB response does not actually opine on the significance of comparative selection rates, a quick comparison of the numbers suggests that it is not reasonable to conclude that the mismatch is insignificant. The selection rates for the FY-15 and FY-16 boards at issue are nearly 75 percent. AR Vol I 017, 038, 074. The chance of randomly picking an officer who then fails to promote is therefor roughly 25 percent. The chance of picking just two officers who both fail to promote is thus 6.25 percent (.25 squared). The chance of picking seven lieutenants who all fail to promote is 0.006 percent (.25 to the seventh power). This is both improbable—absent a mechanism such as the described bias—and admittedly simplistic. Plaintiff would likely agree that some portion of the incongruity might result from factors other than impermissible bias, but the AR fails to provide any explanation for the disparity. As such, it does not indicate a reasoned path to denial of the request. One possibility other than bias at promotion boards is that there was permissible bias against NCIS on the front-end: that only the lowest performance quartile of judge advocates were assigned to NCIS, but were then not subject to similar bias for purposes of promotion. This might be unbelievable and of concern to Navy leaders interested in quality support to NCIS, but is also suspect in that one would still expect differentiation in

performance at NCIS among those assigned.  Some of the officers would blossom or

otherwise stand out for their performance at NCIS, and a positive performance trend would

be recognized by board members.  Regardless, Defendant's SSB response does not logically

address the 0 of 7 statistic in comparison to the overall selection rate.

"Circumstantial evidence is particularly important in bias and discrimination cases, in

which direct evidence is either not present or difficult to obtain." *Mori*, 917 F. Supp. 2d at 65

(citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100 (2003)).  In *Mori*, Defendant's SSB

response unjustifiably rejected circumstantial evidence and concluded that the plaintiff, a

more senior Marine Corps judge advocate, had therefore not produced any evidence that

members had violated their oaths.  917 F. Supp. 2d at 65-66.  Among other deficiencies noted

by that court, Defendant provided no response to evidence that three similarly assigned

Guantanamo defense counsel also failed to promote.  917 F. Supp. 2d at 65.  Evidence here

regarding similarly situated officers is even more significant than in *Mori*, because the sample

size is larger, and because higher ranking officers such as Mori tend to promote at lower

rates.

**IV.    Defendant did not reasonably address bias related to the vetting by NCIS of
senior judge advocates for access to GDMA information, and Admiral Derenzi's
frustration with that process.**

While explaining that GDMA investigations remained active, the SSB request

described vetting of Navy officials for access to GDMA-related information, and noted that

this vetting was coordinated between NCIS, OGC, and the Department of Justice.  AR Vol I

006.  The SSB request specifies that Admiral Derenzi was subject to that vetting process, and

at least one senior member of OJAG was denied access as a result of vetting.  AR Vol I 006.

The SSB request placed this in context of historical tensions between uniformed leaders and civilian-run components of the Navy, such as NCIS. AR Vol I 006. Defendant's response does not address the vetting described at all, but rather notes routine records checks conducted before the boards at issue were convened which did not identify Admiral Derenzi as a person of interest in GDMA investigations. AR Vol I 012 FN 2. It is silent regarding vetting or records checks of other board members, but regardless, the fact of whether or not Admiral Derenzi was a persons of interest is not relevant to the SSB request's explanation of bias due to the vetting process. The SSB request indicated that OGC attorneys were aware of Admiral Derenzi's expressions of frustration with the process and its results, and did not claim that individuals were denied access only if they were persons of interest. AR Vol I 006. That individuals would be denied access despite not being persons of interest would actually explain some frustration, but Defendant's response indicates no inquiry into the vetting process or its results. There is no suggestion within the SSB response that Defendant queried NCIS or OGC regarding the vetting process, or vetting results for Admiral Derenzi, her immediate staff, or any other member of the boards at issue. Given the SSB request's explicit reference to other information sources due to the active status of criminal investigations, a reasonable effort to address issues presented would include some type of query into the vetting described. A reasonable reviewer would consider JAG dissatisfaction with NCIS, based on NCIS involvement in GDMA and this vetting process, in a claim of her bias against NCIS, to be an important aspect of the problem presented. Defendant did not even try to look at this issue.

V.      **Defendant failed to address information that at least one board member was interviewed by NCIS as part of the open GDMA investigations, and others had**

held billets which positioned them to have personal interest in GDMA.

Defendant characterizes Plaintiff's assertions of bias as speculative, and notes that Admiral Derenzi is the only board member specifically named in the SSB request. AR Vol I 013. This ignores the foundation presented in the SSB request for Plaintiff's knowledge of open investigations based on duties at NCIS, and suggests that Plaintiff should have pushed limits on disclosure of law enforcement information rather than be circumspect with respect to open investigations. It also ignores the potential ease of inquiry into a discrete and relatively small number of board members at issue, known to Defendant. AR Vol I 023, 080. Defendant could have evaluated the extent of board members' participation and exercised agency judgment on its significance by presenting the list of ten board members in a query to NCIS, or OGC, or an inspector general at the Navy Personnel Command or some other level. The AR indicates that Defendant failed to even consider this. As such the SSB response again fails to map a rational path from the SSB request to its denial.

## VI. Defendant ignored other indicators of OJAG in-group bias against NCIS, while misstating Plaintiff's claim.

The SSB response states that Plaintiff "argues that the majority of JAGC billets are adversarial with NCIS" and rejoins that this is false because many JAGC billets "rely heavily on NCIS investigations to prosecute . . . and maintain good order and discipline[.]" AR Vol I 013. Even if that was Plaintiff's argument, it does not logically follow that reliance on a product equates to understanding and alignment on issues. What the SSB request actually points out is that NCIS has an independent civilian chain-of-command unfamiliar to most judge advocates, and which can be a source of frustration even for lawyers with varied experienced in typical courtroom roles. AR Vol I 007. The SSB request then contrasts

special attention to the Victims' Legal Counsel (VLC) program, staffed by judge advocates, with a low regard for NCIS. AR Vol I 007. Supporting issue-based tensions, Plaintiff also provided an example interaction between NCIS and OJAG which occurred one week prior to each of the boards at issue. AR Vol I 007-008. He described attending a meeting at OJAG prior to the FY-15 board which was initiated by Admiral Derenzi based on defense counsel complaints against NCIS. AR Vol I 007-008. Before the FY-16 board, Plaintiff received a call from an OJAG staffer who was going to brief Admiral Derenzi on an issue of interest involving NCIS, was not satisfied with the NCIS response from a civilian manager at NCIS, and was aware that Plaintiff was the only judge advocate at NCIS headquarters due to other gapped billets. AR Vol 008. The SSB response is silent regarding both the preferential treatment of the VLC program and these example interactions.

## VII. Bias of selection board members based on duty assignment rather than performance is an administrative material error addressable by granting an SSB.

The allegations of bias in Plaintiff's SSB request are consistent with a type of bias previously addressed through the SSB process. *Mori*, 917 F. Supp. 2d at 61 (analyzing bias based in part on assignment). Material error which can be used to justify SSB's is defined broadly to include: "[a]ny error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board[.]" SECNAVINST 1420.1B para. 24(e)(3)(C); *see Mori*, 917 F. Supp. 2d at 64 FN3 (approving use of regulatory language in judicial review).

## VIII. Defendant's denial of Plaintiff's SSB request is arbitrary and capricious in that it fails to directly engage important aspects of the problem presented.

Plaintiff's SSB request remains largely unaddressed. Defendant's written decision

constitutes a contemporaneous record of decision which has "entirely failed to consider an important aspect of the problem," and this denial is arbitrary or capricious under the *State Farm* rubric. 463 U.S. at 43. "[A]gency action that lacks explanation is a textbook example of arbitrary and capricious action." *Mori*, 917 F. Supp. 2d at 64 (*citing Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Admittedly, agency decisions need not precisely address every detail to survive challenges. *Mori*, 917 F. Supp. 2d at 65 (*citing Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997)). However, "in order to allow for meaningful judicial review, the agency must produce an administrative record that delineates the path by which it reached its decision." *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 338 (D.C. Cir. 1989). The SSB request included distinct and verifiable facts, which Defendant does not connect in a rational path to decision. The SSB response does not credibly dispute the unlikely 0 of 7 selection of NCIS judge advocates, and certainly does not compare this to the overall selection rate. It is silent regarding most of the asserted rationale for bias, including dated interactions between Plaintiff and OJAG, and does not offer any alternative theories for the 0 of 7 result. It does not dispute tensions between NCIS and OJAG over the various ongoing issues described. It does not address GDMA vetting or Vice Admiral Derenzi's frustration with NCIS. It does not dispute that NCIS's GDMA investigations touched members of the questioned boards, either through potential affinity with involved senior officers, or because they were interviewed or unsuccessfully vetted. It does not dispute tensions between NCIS and OJAG over GDMA-related records releases. The SSB response exhibits no curiosity or reasonable skepticism in the decision-making process to verify recommendations or gather additional detail beyond that already maintained

or recalled in thin anecdote by judge advocates contacted.  Finally, though the SSB request sought remedy by means of a FY-16 SSB, it clearly alleged bias by members of the FY-15 board as well.  While noting the distinction between basis and remedy, Defendant's only analysis of bias by the FY-15 board members, who were identified in Defendant's own records, was mention of their self-certification of propriety.  AR Vol I 011 FN1, 015, 080.

IX.     **Analysis of remedy in the SSB response is likely not relevant to the question of basis for an SSB, but does mischaracterize Plaintiff's volunteered waiver of judge advocate representation and misstate Defendant's own regulations.**

Purportedly addressing the second type of bias presented, the SSB response digresses into discussion of possible remedy.  AR Vol I 014.  There is nothing wrong with analyzing remedy, except that a reasonably thorough review here reveals that the analysis is flawed in at least two respects, and the blurred treatment of remedy and basis distracts from a failure to seriously inquire into and address the claimed bias.  Along with other shortcomings discussed above, this should have caused Defendant to perform additional inquiry and analysis. Despite Defendant's characterization, Plaintiff has not argued that all judge advocates are incapable of being impartial.  Plaintiff did point to past disparities in promotion rates and causes of logical bias in voluntarily waiving a claim to judge advocate representation on an SSB.  AR Vol I 010.  Defendant's response characterizes this waiver as a claim to entitlement of a board of officers with similar backgrounds to Plaintiff.  AR Vol I 014.  To the contrary, the SSB request did not assert any entitlement to a particular board composition, and welcomed "officers with other warfare/staff designators." AR Vol I 010.  Given that Plaintiff's only staff corps designator is that of a judge advocate, openness to board members from other staff corps communities alone belies this portion of the SSB response.  The SSB

response asserts that Plaintiff's waiver is prohibited by SECNAVINST 1401.3A CH-1, which requires that at least one member of staff corps boards "shall be an Unrestricted Line officer, with the remaining members drawn from the competitive category under consideration." AR Vol I 014. Looking at the instruction itself, this guidance applies to "regularly scheduled promotion selection boards" and the final requirement for competitive category representation is qualified by an aspirational "should" vice "shall." SECNAVINST 1401.3A encl. (1) paras. 1, 1(c)(1). SSB's are explicitly subject to the basic instruction rather than this special guidance. SECNAVINST 1401.3A encl. (1) para. 3. The basic instruction does require one member within the same competitive category, but includes an exception where "no eligible and qualified" officers are available. SECNAVINST 1401.3A para. 6(b). This accords with 10 U.S.C. § 612(a)(2)(B), and Defendant can waive non-statutory requirements. SECNAVINST 1401.3A para. 10. It would be reasonable to classify a biased individual as ineligible to serve on a board, unless the bias is cured in some manner, such as training.

X.    **Defendant's SSB response is not based on substantial evidence.**

Defendant concludes in the Legal Memorandum and notification letter that Plaintiff failed to prove material error by a preponderance of evidence, but does not provide relevant counter-evidence to several assertions, as detailed above. Defendant failed to plausibly counter the 0 of 7 statistic, the existence of GDMA vetting for access, and Admiral Derenzi's frustration with that vetting process and its results. At least some of Defendant's counterpoints, such as the example selection of an NCIS-assigned officer at the FY-17 commander board, and the pre-FY-12 below-zone selection of a prior-service officer, are not responsive to the SSB request. Presented with highly unlikely results and Plaintiff's

explanations for bias within the SSB request, Defendant could have addressed the assertions by logically disputing the distinct and verifiable facts or their meaning. Defendant did neither. Based on the evidence available in the administrative record, including Defendant's silence on several points from the SSB request, a reasonable jury could not conclude that Plaintiff failed to show bias by a preponderance of evidence.

## XI.   Remand to Defendant to conduct an SSB is the only appropriate remedy for improper denial of Plaintiff's SSB request.

10 U.S.C. § 628(g)(1)(B) offers a singular remedy for SSB denials which are deemed arbitrary and capricious or not based on substantial evidence: remand to Defendant for consideration by a board. *Cf.* 5 U.S.C. § 706; *Occidental Petroleum Corp. v. SEC*, 873 F.2d at 338 (discussing greater variety of remedies under the Administrative Procedures Act).

## CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court enter summary judgment in his favor, finding Defendant's denial of SSB as described in the AR to be arbitrary and capricious or not supported by substantial evidence, and remanding to Defendant to convene an SSB.

Dated: May 24, 2017                    Respectfully submitted,

_____
Eric E. Wannamaker

## **CERTIFICATE OF SERVICE**

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that today I mail by U.S. Mail this Memorandum in Support of Plaintiff's Motion for Summary Judgment to:


Office of the Judge Advocate General
General Litigation (Code-14)
1322 Patterson Ave., Suite 3000
Washington Navy Yard, DC 20374-5066


United States Attorney's Office
Civil Process Clerk
Washington Group Plaza IV
800 E Park Blvd, Suite 600
Boise, ID 83712


Executed on: _25 MAY 2017_

Eric E. Wannamaker
Moscow, Idaho