UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC EDGECOMB WANNAMAKER,<br><br>Plaintiff,<br><br>v.<br><br>HON. RAYMOND E. MABUS, JR.,<br>SECRETARY OF THE NAVY,<br>UNITED STATES NAVY,<br><br>Defendants. | Case No. 3:16-cv-00549-CWD<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>**RE: DKT. 25, 27, 33** |

## INTRODUCTION

Before the Court are the cross-motions for summary judgment filed by Eric
Wannamaker and the Secretary of the United States Navy, Raymond Mabus. The motions
concern the Department of the Navy's denial of Wannamaker's request to convene a
Special Selection Board (SSB) to review the Navy's nonpromotion decision. (Dkt. 25,
27.) Wannamaker requested that the Secretary convene a SSB to review his unsuccessful
bid for promotion to the rank of Lieutenant Commander in the Navy's Judge Advocate
General's Corps (JAGC). Wannamaker asserts the Fiscal Year 16 (FY16) Promotion
Selection Board was biased due to his service with the Naval Criminal Investigative
Service and his career path into the JAGC.

After the Secretary denied Wannamaker's request for a SSB, Wannamaker
brought suit in this Court. The Secretary urges the Court to uphold the decision not to

convene an SSB. Wannamaker argues the Court should set aside the Secretary's decision. The Court conducted a hearing on the motions, including Wannamaker's later motion to supplement the record, on February 6, 2018. After hearing oral argument, reviewing the parties' memoranda, and considering relevant authorities, the Court will deny Wannamaker's request to supplement the administrative record; grant the Secretary's motion for summary judgment; and deny Wannamaker's motion for summary judgment. The Secretary's decision to deny Wannamaker's request for a SSB satisfies the "unusually deferential" standard of review applicable in cases of this type.

## FACTS[1]

Wannamaker enlisted and served on active duty in the United States Navy for sixteen years. He began his military career in 1992, attending the United States Naval Academy and graduating with a degree in systems engineering in May of 1996. After graduation, he served as a Naval Flight Officer, among other duties. He consistently received high praise, and was recognized in October of 2001 for "[h]is unparalleled leadership and knowledge as the weapons training officer…."

In 2005, Wannamaker resigned his commission to attend law school. He graduated from the University of Utah School of Law in May of 2008.

After graduation from law school, Wannamaker joined the Navy Judge Advocate General's Corps (JAGC) in 2008, and thereafter served the JAGC in various capacities.

---

[1] The facts are taken directly from the Administrative Record (AR) submitted by the Secretary. The AR was submitted in two parts, Volumes I and II, and can be found at Docket No. 23. Because the ECF submission was voluminous, for ease of reference, the Court cites to the AR using the AR record cites rather than the docket numbers.

He consistently earned exceptional praise for his legal acumen and leadership. He provided legal services as a staff Judge Advocate in Amphirious Squadron Four from March 2010 to May 2011, and served in the Naval Legal Service Office Mid-Atlantic from April of 2009 to May of 2012. His last fitness report and counseling record covering the period February 2012 to May 2012, reflected that Wannamaker was an accomplished litigator, and a "superb, dependable, and versatile performer who consistently performed at a high level. Select for CSB and promote to 4 soonest!"

From May of 2012 to January of 2016, Wannamaker served as an Assistant Staff Judge Advocate at the Naval Criminal Investigative Service (NCIS). He reached the rank of Lieutenant, consistently earning high praise. After only six months, Wannamaker was recognized as "the cream of the crop," "outstanding," and a "top performer." During his second review period of December 2012 to January 2014, Wannamaker was described as "ris[ing] to every occasion—performing at the 0-4 Level," and his senior officer recommended that he be promoted "ahead of peers!"

For the review period February 2014 through September 2014, Wannamaker was described by his senior officer as "one of the BEST JAGS I have ever worked with in my 30 years!!" The promotion recommendation was "must promote/Early promote." For the period of September 2014 to January 2015, Wannamaker's Fitness Report and Counseling Record indicated he was the "#1 of 16 highly competitive [Lieutenants] regardless of designator or [Unit Identification Code]," and that he was an "outstanding Judge Advocate and Officer." The promotion recommendation was "early promote."

In 2014, Wannamaker was considered, but not selected, for promotion to lieutenant commander by the Fiscal Year 2015 (FY15) Active-Duty and Reserve Navy Officer Promotion Selection Board. In 2015, Wannamaker was again considered, but not selected, for promotion by the Fiscal Year 2016 (FY16) Active-Duty and Reserve Navy Officer Promotion Selection Board. The members of the FY16 board for the JAG Corps included Vice Admiral DeRenzi, JAGC, USN, the President of the selection board; and board members Captain Laurer, JAGC, USN; Captain Sullivan, JAGC, USN; Captain Galindez, JAGC, USN; and Commander Connolly, USN. Wannamaker again was not selected for promotion.

Because of Wannamaker's failure to select for promotion, he faced mandatory involuntary separation.[2] On October 20, 2015, Wannamaker filed for relief with the Secretary of the Navy, seeking a Special Selection Board (SSB) to reconsider his FY16 promotion. The grounds asserted were "adverse bias" of the FY16 Promotion Selection Board members based upon Wannamaker's affiliation with NCIS. Wannamaker cited the following as evidence of such bias: (1) of the last seven judge advocates assigned to NCIS, none had been promoted while on active duty; (2) circumstances suggested that senior judge advocates as a group, including members of the FY16 Promotion Selection

---

[2] Wannamaker's last fitness report and counseling record pertained to his duty station at NR RLSO Northwest, and reflected service dates of February 2016 to November 2016. The report, submitted upon separation from active duty, indicated Wannamaker was "outstanding," a "can-do officer who takes initiative to perform the hardest tasks. He has unlimited leadership potential in the JAG Corps." However, because of the FY16 non-promotion decision, Wannamaker was required to, and did, resign. He separated from service with an honorable discharge, having received numerous commendation medals and achievement medals throughout his naval career.

Board, were biased against NCIS; and (3) Vice Admiral DeRenzi, the President of the FY16 Promotion Selection Board, had been denied access to certain documents while she was at NCIS, and therefore harbored a bias against NCIS JAGC officers. Wannamaker claimed also he was treated disparately due to being a prior active-duty line officer who was not accessed into the JAGC via the Law Education Program (LEP).

The administrative record contains an action memo dated November 21, 2016, from Vice Admiral R.P. Burke, Deputy Chief of Naval Operations, addressed to the Secretary of the Navy, recommending the Secretary disapprove Wannamaker's SSB request. The action memo provides as support a detailed legal memorandum addressing Wannamaker's assertions. (AR Vol. 1 at 003-015.) The Assistant Secretary of the Navy initialed Burke's memo, indicating disapproval of the SSB request. (AR Vol. 1 at 004.) Commander M.L. Pompeo drafted a formal response dated January 11, 2017, notifying Wannamaker that the Assistant Secretary of the Navy had denied Wannamaker's request for a SSB. The formal response references Wannamaker's SSB request and SECNAVINST 1420.1B. (AR Vol. 1 at 001.) The parties agree that these documents, collectively, set forth the Secretary's decision and the bases for the same.

Wannamaker filed the instant action on January 22, 2016, later amending his complaint on January 20, 2017, after he received the January 11, 2017 official notice from the Department of the Navy denying his SSB request. He seeks an order directing the Secretary to convene a SSB for FY16. Specifically, Wannamaker's amended complaint alleges the Secretary's decision not to convene a SSB was arbitrary and capricious, and not supported by upon substantial evidence. Wannamaker alleges the

FY16 Promotion Selection Board was tainted by unfair bias based upon his affiliation with NCIS, and reflected disparities in promotion results between JAGC Officers assigned to NCIS versus JAGC officers on other assignments. He asserts also disparate treatment due to his prior service as a naval flight officer and failure to access the JAGC via the LEP.

## ANALYSIS

### 1.      Standard of Review

#### A.      *Summary Judgment Standard*

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The initial burden is on the movant to demonstrate the lack of a material fact dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if the evidence, when viewed in the light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). However, a party must provide more than "a scintilla of evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party. *Id*. at 252. While the nonmoving party is entitled to all reasonable inferences in his favor, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials—including the

facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

**B.    *Limited Scope of Review***

The Court has the authority to review a determination made by the Secretary of a military department not to convene a special selection board in the case of any person. 10 U.S.C. § 628(g)(1)(A). In doing so, the Court may set aside the Secretary's determination only if the Court finds the determination to be: (i) arbitrary or capricious; (ii) not based on substantial evidence; (iii) a result of material error of fact or material administrative error; or (iv) otherwise contrary to law. *Id.* Adjudication of such a challenge requires the Court to "determine only whether the Secretary's decision making process was deficient, not whether his [or her] decision was correct." *Kreis v. Sec'y of the Air Force,* 866 F.2d 1508, 1511 (D.C. Cir. 1989); *see also Guy v. United States*, 221 Ct. Cl. 427, 608 F.2d 867, 874 (1979) (holding that the court should not upset an agency's non-promotion decision absent "clear, legal entitlement to it," because "[p]romotion under the selection board system results from the exercise of discretionary functions reserved for the Executive branch."). If the Court sets aside the Secretary's determination not to convene a special selection board, the Court must remand the matter to the Secretary, who must provide for consideration by such a board. 10 U.S.C. § 628(g)(1)(B).

Under the "arbitrary or capricious" standard of review, judicial review of military personnel decisions must be "unusually deferential."[3] *Mueller v. Winter*, 485 F.3d 1191,

---

[3] Wannamaker argues the unusual deference standard does not apply here, because the standard has been used primarily in the context of requests for correction of records under the Administrative

1198 (D.C. Cir. 2007) (citing *Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002); *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (deference is required "to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence.")).[4] However, while a court has no interest in undermining military personnel decision-making through aggressive judicial review, *see Mueller*, 485 F.3d at 1198, it equally has no intention to simply rubber-stamp the Secretary's decision without any further review, *Mori v. Dep't of the Navy*, 917 F. Supp. 2d 60, 63 (D.C. Cir. 2013).

The Secretary must "give a reason [for the promotion decision] that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA." *Kreis*, 866 F.2d at 1514–1515. Although "such a deferential standard of review" enables the court to reverse "[p]erhaps only the most egregious [promotion] decisions," the high level of deference accorded to military promotion decisions "reconcil[es] the needs of military management with Congress's mandate for judicial review." *Id.* at 1515.

The Court must consider also whether the denial was based on "substantial evidence," or evidence that would have made it possible for a reasonable jury to reach the

---

Procedure Act, and not applied to requests to convene a SSB. (Dkt. 29 at 4-5.) To the contrary—the courts in *Mori v. Dep't of the Navy*, 917 F.Supp.2d 60 (D.C. Cir. 2013), *Miller v. Dep't of Navy*, 601 F.Supp.2d 90 (D.C. Cir. 2009), and *Miller v. Dep't of Navy*, 476 F.3d 936 (D.C. Cir. 2007), applied the unusually deferential standard to its review of denials of requests to convene a SSB. The Court therefore will apply the unusually deferential standard of review here.

[4] The Court looks to the D.C. Circuit for applicable authority. The parties did not cite to, and the Court did not find, any Ninth Circuit authority interpreting 10 U.S.C. § 628(g).

same decision. *See Allentown Mack Sales and Serv., Inc. v. Nat'l Labor Relations Bd.*, 522 U.S. 359, 366–67 (1998) (citations omitted), *cited in Mori*, 917 F.Supp.2d at 63. In addition, the Court must ensure through its "material ... error" review that no "error of fact or administrative/procedural error...more likely than not...deprived the officer concerned of a fair and impartial consideration by the board." *See Miller v. Dep't of Navy*, 476 F.3d 936, 939 (D.C. Cir. 2007) (quoting SECNAVINST regulations).[5] Finally, the Court also may find a decision "contrary to law" if it "deprive[d] the officer concerned of a constitutional or statutory right." *Id*.

---

[5] The Secretary argues Wannamaker must present "cogent and clearly convincing evidence" that the Secretary's decision was arbitrary and capricious, (Dkt. 30 at 4), while Wannamaker argues the "substantial evidence" standard applies, (Dkt. 29 at 5-6). The Court has reviewed the three cases the Secretary cites in support of the argument for application of the cogent and clearly convincing standard. *See Stem v. England*, 191 F.Supp.2d, 1 (D. D.C. 2001); *Sasen v. Mabus*, 2017 WL 1147443 at *4 (D. Mass. Mar. 27, 2017), and *Pearl v. United States*, 111 Fed. Cl. 301, 311 (2013.) The Court finds all three inapplicable to the Court's review of the denial of a request to convene a SSB. The three cases involved review under the Administrative Procedure Act for the following: (1) the agency's failure to correct an officer's fitness evaluation (*Stem*); (2) the Board of Correction of Naval Records' decision not to reverse the effects of an officer's non-judicial punishment (*Sasen*); and (3) the Army's finding that the plaintiff was not rendered unfit for service by post-traumatic stress disorder, which finding affected the service member's retirement compensation (*Pearl*). The Court therefore will apply the substantial evidence standard adopted in *Mori*, in which the court reviewed the Secretary's decision to deny a SSB. *Mori*, 917 F.Supp.2d at 63.

**C.     *Evidence Considered***

Preliminarily, the Court must consider whether Wannamaker's extra record evidence submitted with his reply brief in the form of a declaration and attached documents, as well as the documents submitted in his reply in support of the motion to supplement, should be considered. (*See* Dkt. 29-1, 33, 36.) The Secretary argues the Court should not.[6] The Court agrees.

In making its determination under 10 U.S.C. § 628(g)(1)(A), the Court is limited to review of the administrative record before the agency. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985). The task of the reviewing court is to apply the appropriate standard of review to the agency decision based on the record the agency presents to the reviewing court. *Id.* Parties may not use "post-decision information as a new rationalization either for sustaining or attacking the Agency's decision." *Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794, 811–12 (9th Cir. 1980).

The declaration Wannamaker submitted in support of his motion for summary judgment purports to outline his role within NCIS and how NCIS functioned as a

---

[6] In the opposition to Wannamaker's motion to supplement, the Secretary argues the Court should deny the motion because it seeks to supplement the record with inadmissible evidence under Fed. R. Evid. 1004. Wannamaker simply summarized the documents he wished the Court to consider, rather than supply the original documents. Alternatively, the Secretary did not object to the Court considering the documents referenced provided the actual documents were introduced. Wannamaker later submitted them. (Dkt. 36.) While the Court appreciates the evidentiary argument, the Court will instead analyze the request under 10 U.S.C. § 628(g)(1)(A), which is the applicable standard to all requests to supplement the administrative record.

delegated FOIA Initial Denial Authority related to the vetting process to gain access to

Glenn Defense Marine Asia (GDMA) investigative records. He referenced two news

articles related to the GDMA scandal, one from 2015, and another from 2017, which he

contends described GDMA as the worst corruption scandal in naval history. Wannamaker

asserts he had knowledge that at least one senior Office of the Judge Advocate General's

Corps (OJAG) leader was unsuccessfully vetted for access to GDMA investigative

records, and that there were persons with knowledge of the vetting process that the

Secretary could have sought out for more information regarding the OJAG officer who

was not selected. Collectively, this information, Wannamaker argues, supported his

claims of bias harbored by OJAG and, specifically, by DeRenzi, the president of the

FY16 Promotion Selection Board.

The additional documents submitted with Wannamaker's motion to supplement

the record consist of email correspondence related to the Department of the Navy's

request to vet senior naval officers for access to information on ongoing investigations

into the GDMA scandal, which records were produced in response to Wannamaker's

Freedom of Information Act request. (Dkt. 33.) The vetting correspondence, which spans

a period from November of 2013 to August of 2015, consists of redacted emails

concerning the vetting of DeRenzi and Rear Admiral Crawford[7] by NCIS to provide them

with access to NCIS classified documents related to NCIS's investigation into the GDMA

scandal. (Dkt. 36.)

---

[7] Rear Admiral Crawford served on the FY15 Promotion Selection Board.

There are four instances where extra-record materials may be considered when the Court is asked to review an agency decision based upon the administrative record considered by the agency.[8] *Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (internal citations omitted). The plaintiff bears the burden of establishing that the extra record evidence falls within at least one of the four exceptions. *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1116 (9th Cir. 2009). Even if the Court does look beyond the administrative record, the Court should consider such evidence relevant to the substantive merits of the agency decision only for the limited purpose of background information or to determine whether the agency considered all pertinent factors. *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989).

Although not discussed in the briefing, Wannamaker raised two of the four factors during oral argument: (1) that the evidence was necessary to determine whether the agency considered all relevant factors; and (2) that supplementation was necessary to explain complex subject matter. Upon review of the extra-record materials, the Court finds Wannamaker has not carried his burden of establishing that the extra record evidence he has proffered falls within either exception.

---

[8] These four instances are:

> (1) if the evidence is necessary to determine whether the agency has considered all relevant factors and has explained its decision,
> (2) when the agency has relied on documents not in the record, or
> (3) when supplementing the record is necessary to explain technical terms or complex subject matter, [or] ...
> (4) when plaintiffs make a showing of agency bad faith.

*Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (internal citations omitted).

By way of his declaration and his request for supplementation, Wannamaker attempts to do what he claims the Secretary failed to do, which is investigate his claims of disparate treatment and bias. Put differently, Wannamaker contends that, had the Secretary looked harder, the Secretary would have found information to support Wannamaker's claims of failure to promote NCIS JAGs and evidence of Vice Admiral DeRenzi's bias. Wannamaker claims that, because of the sensitivity of information derived from his duties at NCIS, he worded the SSB request to bring attention to the availability of corroborating information under the Secretary's control, without disclosing sensitive information.

Wannamaker's declaration detailing his own personal knowledge about NCIS's investigation into the GDMA corruption scandal, which forms the basis of his bias claims, is just that—his personal knowledge, now relayed to the Court, to justify his assertion that there was more information available to support his bias claims had the Navy just looked for it. Further, many of the attachments are dated from 2017, after the FY16 Promotion Selection Board convened. As such, the information constitutes "post-decision information, which may not be advanced as a new rationalization either for sustaining or attacking an agency's decision." *Ctr. for Biological Diversity*, 100 F.3d at 1450.

Nor does Wannamaker's FOIA request related to the vetting of DeRenzi and Crawford help to explain complex information. It does not appear the Secretary disputes that DeRenzi and Crawford were subjected to the vetting process, and the legal memorandum drafted for the Secretary's review specifically mentioned DeRenzi's record

was reviewed for adverse or reportable matters related to the ongoing GDMA investigation prior to approval of her membership on the FY16 Promotion Selection Board. (AR Vol. 1 at 012 n.2.) In other words, it appears the Secretary considered and addressed the possibility of a conflict of interest had DeRenzi been a person of interest in the GDMA investigation, which may have potentially supported Wannamaker's assertion of bias. Thus, the new information, which neither discloses the conclusion reached nor anything telling regarding the outcome, is not necessary for the Court to understand the issues presented here.

The Court therefore limits its review to the administrative record before the Secretary regarding the Secretary's denial of the SSB Request, and will address Wannamaker's argument that the agency failed to undertake a more thorough investigation in light of his claims made at the time of his request to convene an SSB.

## DISCUSSION

### 1.      Existence of Bias

Wannamaker argues the FY16 Promotion Selection Board was biased against him based upon his association with NCIS, and because he did not join the JAGC via the Law Education Program (LEP). In support of his October 20, 2015 SSB request, Wannamaker referenced the following legal standards, instructions, and documents:  (a) Title 10, U.S. Code, Section 628; (b) SECNAVINST 1420.1B of 28 Mar 06; (c) DoD Instruction 1320.11 of 12 Feb 13; (d) DoD Instruction 1320.14 of 11 Dec 13; (e) SECNAV Memo of

2 Dec 14 (FY-16 Selection Board Precept);[9] and (f) OPNAVINST 1120.11 of 29 Dec 05.[10]

As evidence to support his claim of bias due to his work with NCIS, he identified a disparity between promotion statistics of judge advocates as a whole and the selection of zero of seven recent judge advocates assigned to the NCIS. Wannamaker next claimed that circumstances, such as the ongoing investigation of GDMA, suggested that Senior Judge Advocates as a group, including members of the FY16 Promotion Selection Board, were biased against NCIS. Next, Wannamaker claimed that Vice Admiral DeRenzi's tenure as Judge Advocate General and President of the FY16 PSB, coincided with the dearth of promotions for officers associated with NCIS.

Wannamaker claimed also that DeRenzi had been vetted by NCIS for access to classified information involving the GDMA corruption scandal, and alleged she was frustrated by the process and results because at least one senior member of OJAG was denied access, and she was generally frustrated with NCIS's role in GDMA. (AR Vol. 1 at 006.) Wannamaker noted that members of OJAG routinely had conflicts with NCIS

---

[9] The FY16 Order convening the Promotion Selection Board, and the corresponding Selection Board Precept, is found in the record at AR Vol. 1 at 037-073, and also in the Appendix, Exhibit H, Docket 24. The Selection Board Precept provided written guidance to the selection board members regarding the qualifications for promotion, the duties of the Board President, and the applicable guidelines governing board proceedings. Important here, Wannamaker confines his appeal to the FY16 Promotion Selection Board, and does not contest the FY15 board decision, contrary to his arguments during the hearing. Wannamaker's SSB request mentions the FY15 Promotion Selection Board decision in the context of his bias claims, alleging systemic bias as a group by senior JAGs against NCIS. (AR Vol. 1 at 006.) But the appeal is clearly limited to the FY16 board decision.

[10] Promotions for active duty Navy officers are governed by statute, Department of Defense Instructions ("DoDIs"), and Secretary of the Navy Instructions ("SECNAVINSTs"). The parties provided the relevant DoDIs and SECNAVINSTs in the Joint Appendix. (Dkt. 24.)

because of NCIS's oversight role, and because NCIS was the gatekeeper for public records requests seeking GDMA-related Navy records. Wannamaker provided two examples where he interacted directly with OJAG personnel on issues of direct interest to DeRenzi, one of which occurred one week prior to the convening of the FY16 board. He referenced a May 7, 2014 meeting, where DeRenzi asked an NCIS Deputy Assistant Director to look into complaints by defense counsel, and a phone call in May of 2015, when Wannamaker received a phone call from OJAG requesting information to brief DeRenzi on questions related to NCIS investigations of retaliation. He describes the tenor of these encounters as "negative."

Next, Wannamaker set forth the evidence of disparate treatment against him due to his status as a judge advocate with previous service in the Navy who did not join the JAGC via the LEP. Wannamaker vaguely referenced information available that would confirm former pilots and naval flight officers like himself were underrepresented among prior service officers in the JAGC. And, with regard to non-LEP prior service officers, Wannamaker indicated non-LEP prior service officers tended to promote at a lower rate than LEP officers.

Wannamaker's primary argument in this appeal is the Secretary conducted an inadequate inquiry in light of the circumstantial evidence he provided with his SSB request regarding the existence of bias and disparate treatment. For example, Wannamaker argues the Secretary did not investigate the relative promotion rates of NCIS JAGs, and failed to look to the Navy's own data repositories or consider evidence within the Navy's control to determine those rates. Wannamaker attacks also the

Secretary's reasoning, arguing the example given of a NCIS judge advocate who promoted in FY17 is flawed because it was from a later year, while DeRenzi's tenure coincides with a dearth of promotions for NCIS officers in FY16. He also challenges the fact that the Secretary did not address the existence of bias related to the vetting of DeRenzi for GDMA records access. Wannamaker relies primarily upon *Mori v. Dep't of the Navy*, 917 F. Supp. 2d 60, 63 (D.C. Cir. 2013) as support for his arguments.

The Secretary asserts, however, that Wannamaker failed to produce any evidence, beyond his own speculation, in support of his SSB request that bias existed among the decision makers on the FY16 PSB (or the FY15 PSB, for that matter). For instance, Wannamaker failed to provide evidence supporting his assertion of lower promotion rates for judge advocates assigned to NCIS, such as identifying the seven NCIS-affiliated JAGs who failed to promote, or establishing that any of the seven NCIS-affiliated judge advocates were eligible for promotion. Second, Wannamaker failed to produce evidence, other than speculation, that DeRenzi was actually frustrated with NCIS, and thereby harbored bias toward NCIS or its affiliated JAGs. And third, other than speculation that the relationship between OJAG and NCIS was strained, Wannamaker failed to produce witness statements or documents supporting this allegation.

As for Wannamaker's final claim of disparate treatment based upon prior service and outside legal education, the Secretary disputes that evidence exists or was provided with the SSB request, supporting the allegations other than hearsay that the board was biased against Wannamaker for those reasons. The Secretary contends Wannamaker failed to produce evidence of his claims, and that he cannot rely upon mere speculation.

Without some corroboration, the Secretary contends it was not required to investigate speculative claims made in the SSB request.

The crux of the matter is the strength of Wannamaker's circumstantial evidence. In *Mori*, the plaintiff also presented circumstantial evidence of bias against him in support of his request to convene a SSB. There, the plaintiff claimed the selection board was biased against him specifically because he provided a legal defense to Hicks, a suspected terrorist detained at Guantanamo Bay. In support of his allegations, the plaintiff attached news reports of his defense of Hicks, and an affidavit from a USMC officer indicating that several USMC officers from the same community as a selection board member felt that the plaintiff's advocacy was disloyal. Further, the plaintiff noted that only one member of the selection board was a fellow judge advocate, a factor that may have prevented the other board members from understanding the plaintiff's ethical obligation to vigorously defend Hicks.

Additionally, the plaintiff in *Mori* noted that, among the three judge advocates assigned by the Department of the Navy to defend Guantanamo detainees, not one received a promotion from a promotion selection board during the course of their representation of detainees. The plaintiff noted also that the selection board members had served in combat roles during the war on terror, which could have biased them against him, since the plaintiff defended a suspected terrorist. And finally, the plaintiff noted that two members of the board had been in direct adversarial relationships with him during the course of his military career.

The court indicated that the Secretary could not simply reject such circumstantial evidence. *Mori*, 917 F.Supp.2d at 65. By responding that the plaintiff had failed to produce "any evidence that any of the board members deviated" from their instructions and their oath to uphold the integrity of the selection process, the court found the Secretary had failed to meet his obligation. *Id.* The court held that the Secretary failed to explain why the circumstantial evidence possessed limited or no value; failed to explain why the inference of bias from the circumstantial evidence was unreasonable; and, failed to provide an adequate explanation of the process by which he reached his decision. *Id.* at 66. In the absence of any explanation, and the outright rejection of the plaintiff's evidence, the court found the Secretary did not adequately explain its decision to deny the plaintiff's SSB request, and remanded the case to the Secretary of the Navy to convene a SSB to reconsider the denial of the plaintiff's promotion. *Id.* at 66.

Here, in contrast, Wannamaker has not presented the same quality of circumstantial evidence beyond his own speculation as contained within his SSB request. Unlike *Mori*, Wannamaker did not provide news articles, he did not provide affidavits, and he did not identify the seven judge advocates assigned to NCIS who allegedly were eligible for promotion, considered for promotion, but denied a promotion. The legal analysis that was provided to the Secretary and incorporated in the Action Memo distinguished the quality of the circumstantial evidence provided in *Mori* with the lack of similar evidence here. (AR Vol. 1 at 003 – 0015.) And, the Secretary's decision explained the entirety of the decision making process that resulted in the denial of Wannamaker's SSB request.

The Secretary reviewed both Vice Admiral Burke's action memo and the underlying legal memorandum, which were documented as having been adopted as grounds for the denial of Wannamaker's SSB request. The legal memorandum and Burke's action memo adequately explained why an inference of bias is unreasonable from Wannamaker's circumstantial evidence, and set forth the process by which the conclusion was reached. First, there was no indication any member of the JAGC community ever questioned Wannamaker's loyalty, or that DeRenzi or other board members served in roles engendering hostility toward NCIS or were in a direct adversarial relationship with Wannamaker personally. The memo explained that, even accepting DeRenzi may have been biased, Wannamaker had not proffered how the selection board as a whole was infected by her alleged bias against NCIS judge advocates or him personally. Further, the memo explained that many judge advocates rely upon NCIS investigations, and that the JAGC finds the agency important to maintain good order and discipline in the Navy. And last, the memo explained that all members of the FY16 selection board except one were JAGC members, so they would have understood the ethical role Wannamaker occupied.[11]

With regard to the alleged seven NCIS judge advocates who did not promote, the memorandum indicated the claims were specious, citing other NCIS judge advocates

_____

[11] In fact, the memo explained that staff corps selection boards must consist of five or more active-duty list officers, at least one of which must be an Unrestricted Line officer, with the remaining numbers drawn from the competitive category under consideration, citing SECNAVINST 1401.3A CH-1. (AR Vol. 1 at 014.) In other words, JAGC officers select other JAGC officers for promotion.

promoted, most recently in FY17.[12] The memo explained Wannamaker's argument did

not consider other factors that may have influenced the Promotion Selection Boards of

the non-selected judge advocates. Also, without the names of the non-selected judge

advocates referenced, the memo indicated it was impossible to compare their records to

those of the judge advocates who were selected to assess whether factors other than NCIS

affiliation may have played a role.[13]

       In denying the SSB request, the Secretary addressed also Wannamaker's claims of

bias due to his prior service as a naval flight officer and failure to access the JAGC via

the LEP. The Secretary indicated that Wannamaker failed to provide the statements,

statistics, and biographies he relied upon to assert his bias claims, such that the Secretary

was unable to adequately inquire. In spite of the lack of such evidence, the Secretary did

solicit assistance to assess Wannamaker's claims, but indicated the agencies he contacted

---

[12] Wannamaker argued that a promotion from FY17 was insufficient in light of his claims that the FY16 Promotion Selection Board was biased. However, the Secretary explained in the briefing that, because of Wannamaker's claims of systemic bias by OJAC toward NCIS, it would be proper for the Secretary to refute Wannamaker's claims with a promotion decision from FY17. If there was systemic bias, one would not expect any NCIS JAGs to be promoted, even after the conclusion of the FY16 selection process.

[13] Wannamaker contends the Secretary would have had access to the names of the alleged seven judge advocates he referenced, and therefore could have verified his claims. But the Court is not here to critique the quality of the Secretary's investigation. Rather, its limited role is to determine whether the Secretary gave a reason for the promotion decision that the Court can measure. While Wannamaker may disagree with the quality of the investigation into his claims, the Court cannot say that it was arbitrary or capricious for the Secretary to decline the invitation to determine who the seven NCIS JAGs were, review their files and those of the JAGs selected for promotion, and determine why the NCIS JAGs were not selected. This is especially true because Wannamaker did not identify if the seven NCIS assigned JAGs were eligible for, and considered for promotion, in FY16. It would have been a herculean task to ferret out the seven presumably eligible NCIS assigned JAGs, which could have spanned several selection boards. The Secretary adequately explained his decision with reference to other factors that could have influenced the PSBs of the non-selected JAGs, given the Promotion Selection Board Precept identified for the Board the factors it should consider in determining the JAGs selected for promotion.

did not maintain data to support Wannamaker's assertion. Rather, the Secretary found the opposite was true.

In sum, the Secretary concluded that, without any supporting documentation, Wannamaker had failed to show by a preponderance of the evidence that any error or bias occurred, and as a result, the board members who comprised the FY16 Promotion Selection Board should be afforded a strong presumption of regularity given they signed an oath that they did so.

Here, the Court is satisfied the Secretary provided a through explanation of the process by which he reached his decision. The explanation is both logical and rational, setting forth the reasons why an inference of bias is unreasonable from Wannamaker's circumstantial evidence, and addressing the evidentiary weaknesses. As for Wannamaker's claims that the Secretary should have conducted an investigation, it appears the Secretary was hampered by lack of information. For instance, Wannamaker failed to identify any persons with suspected knowledge of his claims, such as the OGC attorneys who were allegedly aware of DeRenzi's frustration with NCIS and its vetting process for access to GDMA records. And, with regard to Wannamaker's assertions that former pilots and naval officers who do not access the JAGC through the LEP consistently failed to promote, the Secretary did inquire with two agencies (NPC and the Bureau of Naval Personnel), finding at least one example to refute Wannamaker's claims of systemic bias directed at non-LEP JAGs.

The Secretary's explanation for the determination that Wannamaker failed to show he was entitled to an SSB was not deficient.

## 2.    Substantial Evidence

Wannamaker next asserts the decision to deny his request to convene an SSB was not based upon substantial evidence. Specifically, Wannamaker argues the Secretary failed to provide relevant counter-evidence to rebut his assertions of bias.

The Secretary disagrees, arguing Wannamaker had the burden of proof, and the Secretary had no obligation to ferret out evidence disputing Wannamaker's speculative claims. Further, the Secretary asserts the decision disapproving the SSB request addressed Wannamaker's concerns, and provided reasons for rejecting Wannamaker's assertions.

The Court agrees. While Wannamaker may believe the reasons the Secretary provided lack merit, the Court has identified a rational connection between the materials in the administrative record and the decision to deny the request for an SSB. *See Miller*, 601 F.Supp. at 95 (to uphold the Secretary's determination, the court need only identify a rational connection between the evidence and the decision). The Secretary's analysis demonstrated a well-reasoned basis for his decision, "which is all that is required of the defendant." *Id.* Here, the Secretary was unable, without more information, to determine that Wannamaker's allegations were more likely than not true. Under such circumstances, the investigation the Secretary did undertake (by identifying NCIS judge advocates who did promote, and non-LEP officers who also promoted) was not deficient. *See Miller*, 601 F.Supp. at 96 (holding that the Secretary's conclusion that an SSB was not warranted based upon its investigation was not deficient, because the investigation failed to produce

specific, objective evidence supporting a substantiated allegation of unlawful discrimination).

## CONCLUSION

Because the Secretary adequately explained the decision to deny Wannamaker's SSB request, and exercised his discretion in a reasoned manner, the decision to deny Wannamaker's SSB request is not arbitrary and capricious. As such, Plaintiff's motion for summary judgment will be denied, and Defendant's motion for summary judgment will be granted. Judgment will be entered in favor of the Secretary of the Navy.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Motion for Summary Judgment (Dkt. 25) is **DENIED**.

2)      Defendant's Motion for Summary Judgment (Dkt. 27) is **GRANTED**.

3)      Plaintiff's Motion to Supplement Reply (Dkt. 33) is **DENIED**.

DATED: February 15, 2018

Honorable Candy W. Dale
United States Magistrate Judge